|108    385|
|r208s  267|

### Chicago City Ry. Co. v. Patrick H. O'Donnell, Adm'r.

1. EVIDENCE—*Where it is Conflicting the Jury Must Weigh it.*— Where the evidence is conflicting, it is for the jury to reconcile it if they can; and if they can not do this, they are to reject that which they believe to be unworthy of credit, and to base their verdict upon that which they believe to be worthy of credit.

2. PRESUMPTIONS—*That the Judge Performed His Duty.*—It is the duty of the presiding judge to keep counsel within reasonable bounds, and it must be presumed that he performed his duty in this as well as in other particulars.

3. TRIALS—*Limiting the Number of Instructions to be Tendered to Court.*—The court has no power to limit the number of instructions offered by each side and to refuse to accept an instruction because in excess of such number.

4. SAME—*Where a Refusal to Consider an Instruction is Not Reversible Error.*—A refusal by the court to receive an instruction because in excess of the number allowed by the court's rule is not reversible error, where the substance of such instruction is contained in other instructions given.

Trespass on the Case.—Death from negligent act. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed June 18, 1903.

This is an action to recover damages for the death of John White, appellee's intestate, caused, it is alleged, by the negligence of appellant.

The deceased, July 13, 1900, was driving a one-horse wagon south along Halsted street near Forty-second street in the city of Chicago. Appellant then owned and operated a double track electric street car line on Halsted. This street runs north and south. Forty-second street opens into Halsted from the east, but does not extend west of the lat-

ter street. A building known as the post-office stands on the northeast corner of this intersection. There is a bank building occupying the southeast corner thereof. Appellant ran its south-bound cars on the west track and its north-bound cars on the east track in Halsted street. The deceased worked at number 4824 Halsted street, situate several blocks south of the scene of the accident. As he approached Forty-second street going south he was in the west track immediately behind a slow-moving beer wagon. When he reached Forty-second street he drew his horse to the east and whipped up, either with the intention of passing into Forty-second street, or of passing by the beer wagon. A car coming north on the east track was near by. The motorman rang his gong and shouted, putting on his brake. Instead of turning further to the east, thus clearing the track, the deceased attempted to pass the beer wagon by pulling to the west. There is evidence, if believed, tending to prove that his way to the east was obstructed by another beer wagon passing north on the east of the tracks. When the wagon of deceased and the wagon passing south on the west track were opposite, the car struck the wagon in which deceased was riding, throwing him out and thus inflicting the injuries of which he died the same day. After colliding with the wagon the car ran from five to twelve feet before it stopped. The time of the accident was 8:30 o'clock in the forenoon.

The deceased was seventy-four years of age at the time of his death. "White was an old man but well preserved." His hearing and sight were good. For more than a month prior to the accident he had been working for Mr. Sweet who ran a lumber and coal yard. He stayed about the office and did odd jobs. When he met his death he was returning from delivering a small load of lumber. He had no arrangement with Mr. Sweet as to wages. He left a widow sixty-eight years of age and nine children, all of whom were adults. The three youngest children lived with the parents. His son Thomas being called as a witness was asked whether the deceased " did or did not contribute any money

toward his wife and the children who were living with him." "That is, your mother." Answer: "I have seen him give her different amounts of money, but I don't know just how much for that purpose." It is not clearly shown that the deceased did any work after 1898 until he went into the employ of Mr. Sweet.

The jury found appellant guilty and assessed the damages at the sum of $2,250. The motion for new trial was overruled and judgment was entered upon the verdict, from which this appeal was perfected.

WILLIAM J. HYNES and JAMES W. DUNCAN, attorneys for appellant; MASON B. STARRING, of counsel.

JAMES C. McSHANE, attorney for appellee.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

If this case had been submitted to us for trial without a jury we might have reached a different conclusion than did the jury. But after repeated examinations of the abstract and record, we can not say that the verdict and judgment are not supported by the evidence, nor that they are clearly against the weight of the evidence. (C. & E. R. R. Co. v. Meech, 163 Ill. 305; Gall v. Beckstein, 173 Ill. 187.) Where the evidence is conflicting, it is for the jury to reconcile it if they can; and if they can not do this they are to reject that which they believe to be unworthy of credit, and to base their verdict upon that which they believe to be worthy of credit. The jury see and hear the witnesses. It is their special duty and province to weigh the testimony and to say where, in a mass of conflicting and contradictory evidence, the truth lies. Many things occur in a trial and are apparent to the jury and to the presiding judge which tend to impress both judge and jury with the truth or falsity of the evidence being given, which can not be spread upon the printed page, and hence do not reach us upon appeal. The presiding judge is under obligation to observe all that takes place on the trial. When a motion for new

trial is made, if he, aided by what he thus observed, thinks the verdict is unjust, it is his duty to set it aside. It is true that our power over the finding of the jury is greater than is that of the presiding judge; but, placed as we necessarily are, at a disadvantage, we can not interfere with the verdict and judgment, unless in our opinion they are clearly and manifestly against the weight of the evidence. In this case there is sufficient evidence, if believed by the jury, to support their findings that the deceased at the time of the accident was in the exercise of due and ordinary care for his personal safety, and that the appellant was guilty of negligence as charged in the declaration. The answers of the jury to these questions must stand.

The remarks of counsel for appellee in his closing argument are not to be commended, but we do not regard them as constituting reversible error. An appellate tribunal will not hesitate to deprive an attorney of any advantage he has unjustly obtained by unfair means or by argument outside of the evidence calculated to arouse the prejudice or the passions of the jury. It is the duty of the presiding judge to keep counsel within reasonable bounds. He hears all that is said and sees all that is done during the trial. We must presume that he performed his duty in this as well as in other particulars; and that when the motion for new trial was argued before and decided by him, he took into account the alleged misconduct of counsel. Such questions must be left very largely to the sound discretion of the trial judge. We can not interfere with the exercise of that discretion unless such misconduct and its prejudicial nature are very clearly shown by the record. (W. Chicago St. R. R. Co. v. Annis, 165 Ill. 477; N. Chicago St. R. R. Co. v. Gillow, 166 Ill. 444.) We do not think that the difference which arose during the trial between counsel for appellant and the court in any wise affected the result reached in this case.

The claim of appellant that the damages are excessive can not be sustained.

The action was brought under chapter 70, R. S., entitled

" Injuries."    The right to recover damages for the death of
a person caused by the wrongful act, neglect or default of
another, is unknown to the common law.    The right is
given, regulated and limited by the statute mentioned.
Section 2 of that act provides:

" And in every such action the jury may give such dam-
ages as they shall deem a fair and just compensation, with
reference to the pecuniary injuries resulting from such
death to the wife and next of kin of such deceased person,
not exceeding the sum of $5,000."

Under the common law rule concerning the measure of
damages in actions of tort, the amount of damages is a
question of fact to be determined by the jury.    The law-
making power was not content with this rule, and there-
fore by these words, which confer the greatest discretion
and power, specifically conferred it upon the jury.

It must not be forgotten the jury was instructed, at the
request of appellant, that " the next of kin can only recover,
even where the defendant is guilty, such damages as are a
fair and just compensation with reference to the pecuniary
injuries resulting to the next of kin of said deceased person
from such death."    *    *    *    And, " You can allow to the
plaintiff only such damages as will compensate the next of
kin for the pecuniary injuries, if any pecuniary loss to the
next of kin by reason of the death of John White is shown
by the evidence.    You can not allow any damages for
bereavement or loss of domestic or social happiness.    Grief
or suffering on the part of the next of kin are not elements
for which damages can be recovered in this action."

The damages in cases like the one at bar depend upon
such a vast variety of causes and circumstances that the
court has no standard by which it can measure them.    The
responsibility of determining their amount must rest some-
where, and the law-making power has placed that duty
upon the jury.    By their decision we are bound, unless,
in view of all the evidence, we can say that the amount of
the verdict is not sustained by the evidence, or that such
finding was dictated by passion or prejudice.

The deceased was an old man, but he was intelligent,

strong, and in possession of his faculties.    His hearing and sight were good.   He was still the head of his family and had not yet ceased to be a breadwinner.   It is true his ability to perform remunerative labor was much impaired, but we can not say that had he not met his death in this collision, he might not thereafter have earned and applied to the support of his family the amount of this verdict.

The court refused appellant's instruction No. 13, which stated to the jury the issues in the case; No. 12, which submitted to the jury the question of whether ordinary care on the part of White required him to look before driving on the track upon which he had been driving; No. 3, which told the jury that the fact that the court had given instructions on the subject of plaintiff's damages, or that defendant's counsel had discussed such subject, was not to be taken by the jury as an intimation by the court or an admission by the defendant of the defendant's liability; and No. 9, which instructed the jury that White had no right to drive upon the railway track in question, so as to obstruct or unnecessarily interfere with the passage of defendant's cars.

Instruction No. 9 does not correctly state the law.   This accident occurred at a street crossing, notwithstanding the fact that Forty-second street did not run west from Halsted street; and therefore the rights and duties of the deceased and of appellant were equal.   In so far as it sets forth the care that the deceased should have used, it is fully covered by the given instructions.

From a careful examination of all the instructions, both those given and those refused, we are of the opinion that every essential element contained in the refused instructions is found in the given instructions; and that the jury was fully and fairly informed upon all the material issues in the case.

We also find that none of the modifications which the court made in the instructions tendered by appellant is subject to criticism, except the addition to the seventh instruction, which, while perhaps unnecessary and erroneous, because it calls the attention of the jury to a particular fact, is not reversible error.

Chicago City Ry. Co. v. O'Donnell.

At the close of the case for appellee, the court, of its own motion, entered an order limiting the number of instructions to be tendered, to be examined or given by the court to the jury, to thirty; fifteen for the defendant and fifteen for the plaintiff; and that no instruction in excess of said number would be received and examined by the court, or be given to the jury. To this order and to its statement in the hearing of the jury, counsel for appellant excepted. At the close of all the evidence, eighteen instructions were presented for appellant. The court returned them to appellant's counsel with the request that he pick out fifteen and hand them up, saying: "The court will receive fifteen instructions from counsel and no more." This conversation occurred in the presence of, but at some distance from the jury, "so that it is doubtful whether the jury heard said remarks."

The seventeenth instruction tendered by appellant, to the effect that if the motorman had no notice of any danger to the deceased so as to give him an opportunity to avoid running into the deceased, and the car was then being run with ordinary care, the plaintiff could not recover, the court marked "Not received or passed on," and refused to give it to the jury because it was an instruction in excess of the number the court had declared he would consider. In limiting the number of instructions to be tendered to the court, the learned trial judge violated the rule laid down in Chicago City Ry. Co. v. Sandusky, 198 Ill. 400; but the cause will not necessarily be reversed for this error. An examination of the record shows that the matters set forth in this instruction are fully covered by given instructions Nos. 2, 4 and 5. For that reason, as is decided in the Sandusky case, *supra*, this error is not reversible error.

The testimony in regard to the previous occupation of the deceased, which was admitted over the objection of appellant, was competent as bearing upon his ability to make money in other ways than by manual labor.

The entire record being considered, we must affirm the judgment of the Superior Court.